# EXHIBIT A

STATE OF NORTH CAROLINA

WAKE COUNTY

SHENZHEN RUOBILIN NETWORK
TECHNOLOGY CO., LTD.

Plaintiff,

v.

CHANNELADVISOR CORP. and

CHANNELADVISOR HONG KONG LTD.,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

FILED

2022 OCT 26 P 5:01

WAKE CO., C.S.C

BY——

Civ. No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Shenzhen Ruobilin Network Technology Co. Ltd., ("Plaintiff") brings this class action individually and on behalf of a Class of all those similarly situated for damages and injunctive relief against Defendants ChannelAdvisor Corp. and ChannelAdvisor Hong Kong Ltd. (collectively, "ChannelAdvisor" or "Defendants", each individually as "Defendant") and hereby alleges the following:

## NATURE OF THE ACTION

1. This action is under the consumer protection laws and unfair trade practices against Defendant for selling software that erases past history, rankings and products from e-commerce platforms such as, for example, Amazon or eBay. Defendant's software does the exact opposite of what it promises to do, *i.e.*, *decreases rather than increases* the user's marketing presence on e-commerce platforms.

-1-

## PRELIMINARY STATEMENT

2. Plaintiff is a small business based outside of the United States that is a seller and distributor of household and sporting goods. Plaintiff purchased ChannelAdvisor's software product and services to increase its marketing presence on major online retail platforms, specifically Amazon and eBay. (EX. A.)

3. As part of the onboarding process, ChannelAdvisor required Plaintiff to upload product data from Amazon and eBay on to the ChannelAdvisor System, a software platform, with the intention of increasing their visibility on these sites to increase sales. ChannelAdvisor required Plaintiff to pay a fee for this onboarding upload that included training and supervision.

4. ChannelAdvisor did not provide proper instructions, was generally non-responsive to Plaintiff's questions, and reassigned at least four different account managers to Plaintiff, delaying the onboarding process further.

5. After several weeks and after Plaintiff's failed attempts, ChannelAdvisor took control of Plaintiff's account and uploaded the Plaintiff's product data into the ChannelAdvisor system. ChannelAdvisor refused to explain to Plaintiff what went wrong with its software platform and why personnel at ChannelAdvisor deviated from its marketed protocol. Plaintiff was not adequately trained to set up or use the ChannelAdvisor system.

6. Upload of Plaintiff's product data was not smoothly accomplished even by ChannelAdvisor personnel. ChannelAdvisor made several failed attempts to upload Plaintiff's product data and caused a larger number of products to be removed, or "delisted," from Amazon and eBay. After ignoring repeated warnings to be extra cautious from Plaintiff's staff, ChannelAdvisor went ahead and attempted to upload data for two of Plaintiff's largest accounts.

Consequently, more than 2000 of Plaintiff's product listings were delisted from Amazon by ChannelAdvisor's acts. Similarly, several hundred more were subsequently delisted from eBay.

7. Neither Amazon nor eBay (nor, on information and belief, any other e-commerce platform) had any events that would have caused such massive erasure of Plaintiff's product data.

8. In fact, ChannelAdvisor admitted fault to Plaintiff on several occasions. For instance, in an email dated March 1, 2018, a representative of ChannelAdvisor's office in Shanghai, China, admitted that ChannelAdvisor's "launch manager has caused one of [Plaintiff's] major account listing [sic] withdrawn, which led to estimate [sic] 1 million GMV lost per year..." (EX. B.)

9. On information and belief, ChannelAdvisor's launch manager knew the risks of delisting Plaintiff's accounts *en mass* based on several previous mistakes and lacked the technical expertise and authority to synchronize Plaintiff's product listings with the ChannelAdvisor System. The launch manager blatantly ignored these risks, and took control of Plaintiff's product listings to compensate for the poor training program. The launch manager was poorly trained himself by ChannelAdvisor, as Plaintiff's large account containing 2000+ Amazon product listings was subsequently delisted in error by ChannelAdvisor's admission.

10. Several weeks passed before ChannelAdvisor was able to fix its mistake and relist the products, by which time Plaintiff's "product ranking" for each listing was severely damaged, resulting in substantial financial damages.

11. Amazon's "product ranking" algorithmically determines the listings' page placement based on several criteria. Product ranking is in turn directly correlated to sales activity (i.e., product listings with high rankings are placed closer to the top of Amazon's webpage, thereby increasing visibility and sales.) To date, Plaintiff's product listings have not recovered their original rankings.

12. Plaintiff's sole purpose of purchasing ChannelAdvisor's software and services was to improve Plaintiff's sales performance on Amazon and eBay. Instead, delisting Plaintiff's products irreparably injured its business, which is centered on Amazon and eBay, causing millions of dollars in damages and lost revenue.

13. Plaintiff has been harmed and is being harmed by ChannelAdvisor's acts, including but not limited to: failing to provide proper training to Plaintiff, assuming control over Plaintiff's accounts, ignoring the known risks of delisting Plaintiff's accounts *en masse* based in part on its own previous mistakes, ignoring internal safeguards against delisting product data, and utilizing employees who lacked the technical expertise to integrate Plaintiff's product data with the ChannelAdvisor System.

## PARTIES, JURISDICTION, AND VENUE

14. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

15. Plaintiff is a seller and distributor of household and sporting goods based in Shenzhen, China. A large portion of Plaintiff's sales derive from online e-commerce platforms such as Amazon and eBay.

16. Defendant ChannelAdvisor Corp. is an e-commerce company headquartered in Morrisville, North Carolina. Defendant ChannelAdvisor Hong Kong Ltd. is ChannelAdvisor Corp.'s subsidiary or partner for overseas sales and marketing of ChannelAdvisor software products at issue here. In 2013, ChannelAdvisor opened an office in Hong Kong to expand its existing e-cloud business into greater China. Upon information and belief, ChannelAdvisor directs the marketing and development of its products and services, including the subject products and

services, and the deceptive and unfair conduct stemming therefrom, from its headquarters located in Morrisville, Wake County, North Carolina.

17.    At all times relevant to this action, Defendants, in the ordinary course of business as the provider of products and services to businesses who wanted to promote their products on e-commerce platforms, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1 *et seq.*, consumer protection laws, and Defendants' deceptive and unfair trade practices alleged herein have affected businesses within North Carolina, and elsewhere nationwide.

18.    This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. §§ 1-75.4, 7A-240 and 7A-243.

19.    Venue is proper under N.C.G.S. §§ 1-79 and 1-82 in this judicial district because Defendant maintains its headquarters in Morrisville, North Carolina in Wake County and has regularly engaged in business in Morrisville, North Carolina in Wake County.

20.    This Court may exercise personal jurisdiction over ChannelAdvisor because it transacted business within this State, and this action arises out of that business. The US corporate parent, ChannelAdvisor, was directly involved as a participant in the particular transactions at-issue—both alone and in concert with ChannelAdvisor Hong Kong Limited, described herein. Specifically, the main harm (delisting Plaintiff's products) occurred on Amazon's interactive website, by which Defendant actively facilitates marketing and sales to as many consumers as possible, including those within this jurisdiction. Accordingly, Defendant expects or should expect the delistings to have consequences in this jurisdiction and derived substantial revenue from interstate or international commerce.

## ALLEGATIONS OF FACTS

21.     Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

22.     ChannelAdvisor is an e-commerce company headquartered in Morrisville, North Carolina. ChannelAdvisor advertises itself as a cloud-based e-commerce software solutions company that optimizes sellers' performance on various online platforms through a variety of methods:

> "[Re]tailers and brands send a single product data feed to the ChannelAdvisor system, where it's transformed and optimized to sync with dozens of marketplaces and hundreds of digital marketing channels. As orders and performance information flow back through the ChannelAdvisor system, results are measured and broken down to help you make better decisions about your e-commerce strategies." (EX. C.)

23.     In other words, retailers and brands channel their product listings through ChannelAdvisor's proprietary software System, which strategically deploys the listings onto various online marketing platforms (Amazon, eBay). ChannelAdvisor then collects and assesses the sales data to "make better decisions about ...e-commerce strategies." *Id.*

24.     ChannelAdvisor thus serves as a bridge between the retailer and the online platform, and the retailer's "product data feed" is necessarily controlled, modified, and synced to the online retail platform by the Channel Advisor System to accomplish the stated task of optimizing online presence and sales. *Id.*

25.     In particular, ChannelAdvisor advertises its "Product Content Optimization" ("PCO") service, which is designed to increase product visibility by offering support for content management, optimization and delivery to help customize product content for optimal performance on the online retail platforms. (EX. D.) Amazon and eBay have search engine fields to organize millions of product listings. If the search engine does not recognize certain keywords used by the seller, the product will have poor visibility on the website, resulting in low sales. PCO

is thus designed to map the product descriptions to the correct search engine fields "every time," resulting in higher sales. *Id.*

26.     Additionally, PCO is designed to affect Amazon's product ranking system. Having a high product ranking on Amazon is crucial to increasing sales, as more customers will find the product when searching the site. Amazon's product ranking is influenced by a variety of factors, including the following:

- Conversion rate—reviews, image quality and prices. Sellers must keep their prices competitive to maintain a good conversion rate.

- Relevancy—the product description must be relevant to the customer's search inquiry. PCO aims to make the product more relevant to the user's search; thus the product will appear higher on Amazon's page and be more visible to the customer. This increases sales because product that is listed near the top of page one will have more sales than a listing buried on page five.

- Customer satisfaction and retention—positive seller feedback and good customer product reviews that are removed when a product is delisted.

27.     Products that are "delisted," or taken off Amazon for whatever reason automatically lose their sales ranking. It may take months for a relisted product to regain its original ranking and visibility, resulting in lower sales activity and lost profits.

28.     Defendant approached Plaintiff's representative in Shenzhen, China about subscribing to its services, including PCO. Plaintiff agreed and purchased the software product and services that are at issue here.

29.     Plaintiff also subscribed to ChannelAdvisor's "Launch Assistant Service" for both Amazon and eBay, under which ChannelAdvisor was required to provide proper training and

assistance to help Plaintiff's staff upload its product listings data for Amazon and eBay into the ChannelAdvisor System.

30.     However, ChannelAdvisor's account managers failed to properly train and assist Plaintiff staff as required under the agreement. Examples of such failure include numerous delays and rescheduling of training sessions, lack of response to Plaintiff's inquiries, and assigning different account managers to Plaintiff on several occasions.

31.     Because ChannelAdvisor's training program was so poor, it decided to take matters into its own hands. Specifically, ChannelAdvisor's account management team in China assumed control of Plaintiff's ChannelAdvisor account and attempted to conduct the data synchronization themselves, in violation of ChannelAdvisor's stated policy. (Ex. E.) However, ChannelAdvisor's launch managers lacked the technical expertise to perform this task, on information and belief.

32.     For instance, ChannelAdvisor mistakenly delisted several small accounts on numerous occasions, leading Plaintiff to express its misgivings about ChannelAdvisor's ability to handle the main Amazon accounts containing 2000+ listings. Despite repeated assurances that the launch managers were qualified to perform the transactions and no more mistakes would occur, ChannelAdvisor delisted Plaintiff's main Amazon account. Plaintiff's product ranking for each listing was severely impaired as a consequence.

33.     ChannelAdvisor blatantly ignored the known risks of deleting the Amazon listings *en masse,* which were specifically raised by Plaintiff on several occasions. Further, ChannelAdvisor likely overlooked, bypassed, or was recklessly unaware of internal safeguards designed to prevent the deletion of product data from Amazon and eBay. Specifically, ChannelAdvisor's business model is based on optimizing clients' product listings on online retail platforms. To protect ChannelAdvisor's business reputation, internal checks must have been in place to prevent the

accidental deletion of these listings in bulk. On information and belief, ChannelAdvisor blatantly ignored any such safeguards.

34.    Furthermore, on information and belief, ChannelAdvisor knowingly utilized personnel who lacked the necessary technical expertise and authority to assume control over and onboard Plaintiff's product listings into the ChannelAdvisor system. This fact is supported in part by ChannelAdvisor's previous failures to launch the small accounts, as noted above. Either ChannelAdvisor's software is not functional, ChannelAdvisor's employees were not qualified or ChannelAdvisor's employees failed to train Plaintiff how to use the ChannelAdvisor System. For example, at least one ChannelAdvisor representative who attempted to sync Plaintiff's data with the ChannelAdvisor System had no work experience focused on computer technology prior to joining ChannelAdvisor. (Ex. F.) ChannelAdvisor knowingly gave underqualified employees— who made mistakes time and again—control over Plaintiff's valuable product data.

35.    Plaintiff's staff informed ChannelAdvisor about the Amazon delistings, who promised to fix the problem immediately. But then ChannelAdvisor made yet another error by delisting Plaintiff's eBay listings. Several weeks then passed before ChannelAdvisor finally relisted the products on Amazon and eBay, by which time Plaintiff's Amazon "product ranking" for each listing was severely and permanently damaged, resulting in substantial financial damages.

36.    Importantly, ChannelAdvisor admitted fault in this matter. In an email dated March 1, 2018, an account manager of ChannelAdvisor stated in writing that ChannelAdvisor's "launch manager has caused one of [Plaintiff's] major account listing [sic] withdrawn, which led to estimate [sic] 1 million GMV lost per year..." (Ex. B.).

***ChannelAdvisor Was Directly Involved in the Data Loss***

37. The US corporate parent, ChannelAdvisor, was directly involved as a participant in the particular transactions that caused the data loss—both alone and in concert with the Hong Kong subsidiary.

38. On information and belief, ChannelAdvisor Hong Kong Limited never had an independent database to onboard and store customer data of the Chinese clientele. Rather, the subsidiary's personnel simply entered the customer data into a portal, or dashboard, in the ChannelAdvisor System, which was deisgned and operated by the parent company. This data was then sent to and stored in the ChannelAdvisor System, comprised of domestic servers managed by ChannelAdvisor's technical support team in North Carolina.

39. In other words, the Hong Kong office was mainly responsible for generating new business and interacting with Chinese clientele, who often did not speak English. Once the SOW was executed, the Hong Kong office interacted directly with ChannelAdvisor's technical support staff in North Carolina on a daily basis to onboard the customer data into the ChannelAdvisor System. Again, ChannelAdvisor's own engineers designed the defective ChannelAdvisor System, or platform; the Hong Kong subsidiary simply used the platform to expand the parent corporation's market share into China. Further, ChannelAdvisor owned and controlled the domestic servers which hosted all customer data—including the Chinese customer information sent from the Hong Kong office.

40. For instance, in the referenced email dated March 1, 2018, ChannelAdvisor's Hong Kong account manager, Chris Chia, wrote an email to "CA – Support Admin" at "supportadmin@channeladvisor.com"—a US email address—stating that Plaintiff wished to cancel his account due to the data loss, and then requested "help to initiate" the cancellation from ChannelAdvisor's support team. (Ex. B.)

41.     Accordingly, the parent corporation supervised its foreign subsidiary on a daily basis to onboard, process, and manage all customer data within the ChannelAdvisor System, which is again hosted on domestic servers maintained by ChannelAdvisor's technical support team based in North Carolina.

42.     On information and belief, ChannelAdvisor Hong Kong Limited's office was directly managed by ChannelAdvisor's **own** employee, Mr. James Huang, who was directly appointed by ChannelAdvisor's President and CEO David Spitz. Huang, who was **not** an employee of the Hong Kong subsidiary, was responsible for "spearhead[ing] ChannelAdvisor's growth strategy for Greater China." *See* https://www.businesswire.com/news/home/20131218005193/en/ChannelAdvisor-Appoints-Industry-Veteran-as-Managing-Director-for-Greater-China.

43.     ChannelAdvisor published an article, dated December 18, 2013, announcing Huang's appointment over the Greater China region, and indicating that he worked directly in the Hong Kong office: "Earlier this year, ChannelAdvisor announced its new Hong Kong office in the famous Victoria Harbour. Hong Kong *serves as a hub* for ChannelAdvisor to connect with retailers and manufacturers within the greater China region. Id., emphasis added.

44.     Therefore, ChannelAdvisor's own employee, Huang, was heavily involved in the day-to-day operation of the Hong Kong office, which was a "hub" for expanding ChannelAdvisor's services to the large Chinese market. As Managing Director, Huang would have issued directives to the Hong Kong staff relating to the parent company's centralized data collection procedures. And to ensure ChannelAdvisor's services were deployed consistently in China, Huang would closely scrutinize operations between the Hong Kong sales personnel/launch managers and ChannelAdvisor's technical support staff in North Carolina. Such mandatory policies result in the

11

parent company's management, direction, or conduct of operations in the Hong Kong subsidiary's office specifically related to the data loss at issue.

45. In addition, Huang would have been ultimately responsible for training the Hong Kong staff about how to market and use the ChannelAdvisor platform, which again required close interaction between the Hong Kong and North Carolina offices on *specific* technical issues relating to uploading customer data. However, the Hong Kong staff, in concert with the North Carolina technical support team, deleted Plaintiff's data multiple times, indicating the parent corporation did not properly train its staff on data collection procedures.

46. On information and belief, Huang likely knew the ChannelAdvisor System frequently deleted customer product data. He was thus responsible to consult with the domestic technical support team to determine the root of the problem, but failed to do this for Plaintiff, whose data was deleted on numerous occasions.

47. Therefore, ChannelAdvisor, through Huang and the North Carolina office, took immediate direction of the transactions at issue which resulted in the data loss. Again, all customer data collected by the Hong Kong office was entered into the defective ChannelAdvisor System, which was designed and operated by the parent company's technical support team in North Carolina.

48. Further, ChannelAdvisor's Chinese website is simply a translated version of its US site. *See* https://www.channeladvisor.com/cn/. Therefore, the parent corporation dictated the marketing and sales strategy for the Hong Kong office through its own employee, Huang.

49. The Hong Kong staff were issued email accounts directly from the North Carolina headquarters, not from the subsidiary. For example, one of the account managers working out of the Hong Kong office, Chris Chia, used a domestic email address

(chris.chia@channeladvisor.com) to communicate with the North Carolina technical support team about Plaintiff's account. The subsidiary did not act as an independent company.

50. On information and belief, the subsidiary, which operated simply as a branch office of the parent corporation, is not an independent profit center. Revenues generated by the Hong Kong office flowed to ChannelAdvisor.

51. On information and belief, ChannelAdvisor Hong Kong Limited does not have its own Board of directors; the subsidiary was in essence a branch office of the parent company, as evidenced by ChannelAdvisor's April 2013 press release, titled "ChannelAdvisor Opens Neww Office in Hong Kong, Expands Presence in Asia-Pacific Region." *See* https://ir.channeladvisor.com/news-releases/news-release-details/channeladvisor-opens-new-office-hong-kong-expands-presence-asia.

52. By failing to adequately train the Hong Kong personnel about the ChannelAdvisor System and establish proper backend safeguards within the System itself to prevent wholesale data loss, the parent company, who worked closely with the subsidiary office on a daily basis, was directly responsible for deleting Plaintiff's valuable customer data. Therefore, ChannelAdvisor is liable for the data loss.

53. As noted above, the revenue generated by each Amazon and eBay listing depends heavily on the "product ranking" of each listing generated algorithmically by Amazon or eBay. It took Plaintiff years to achieve a high ranking for each listing, which, to date, have not recovered due to ChannelAdvisor's acts. As a result, Plaintiff has and continues to suffer heavy revenue losses. Plaintiff is harmed by ChannelAdvisor's acts.

## CLASS ALLEGATIONS

54. Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Class:

55. **Class:** All persons or entities headquartered outside of the United States who purchased software product and services of any kind from ChannelAdvisor Corporation for any e-commerce platform, including, for example, Amazon or eBay.

56. Excluded from the Class are ChannelAdvisor, and ChannelAdvisor's officers, agents, and employees. Also excluded from the Class are counsel for Plaintiff, any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

57. Members of the Class are so numerous that joinder is impracticable. While the exact number of members of Class is unknown to Plaintiff, it is believed that the Class is comprised of dozens, if not hundreds, of members.

58. Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual class members because ChannelAdvisor has acted on grounds generally applicable to the Class. Such common and legal factual questions for the Class include:

    a. Whether ChannelAdvisor harmed Plaintiff's and Class Members' business by erasing product data including rankings and history during the onboarding process;

    b. Whether ChannelAdvisor failed to safeguard adequately Plaintiff's and Class Members' product data, including taking reasonable steps to preserve such data that directly correlated to sales;

    c. Whether ChannelAdvisor's software was defective in the manner alleged herein violated federal, state, and local laws, or industry standards;

d.   Whether ChannelAdvisor's personnel interactions with Plaintiff's and Class Members' alleged herein violated federal, state, and local laws, or industry standards;

e.   Whether ChannelAdvisor acted negligently;

f.   Whether Plaintiff and the Class Members were harmed;

g.   Whether ChannelAdvisor's conduct was unfair;

h.   Whether ChannelAdvisor's conduct was fraudulent;

i.   Whether ChannelAdvisor's was unjustly enriched;

j.   Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and disgorgement; and

k.   Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

59.   Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by the ChannelAdvisor's actionable conduct. ChannelAdvisor's conduct that gave rise to the claims of Plaintiff and members of the Class is the same for all members of the Class.

60.   Plaintiff will fairly and adequately protect the interests of the Class because it has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation, including data privacy litigation.

61.   Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions

would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

62. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

63. ChannelAdvisor has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

64. Plaintiff suffers a substantial and imminent risk of repeated injury in the future.

65. North Carolina law applies to the claims of all members of the Class.

66. The State of North Carolina has sufficient contacts to ChannelAdvisor's relevant conduct for North Carolina law to be uniformly applied to the claims of the Class. Application of North Carolina law to all relevant Class Member transactions comports with the Due Process Clause given the significant aggregation of contacts between ChannelAdvisor's conduct and North Carolina.

67. ChannelAdvisor is headquartered in and does substantial business in North Carolina.

68. A significant percentage of the Class Members conduct business in, and ChannelAdvisor aimed a significant portion of its unlawful conduct at, North Carolina.

69. North Carolina has a greater interest than any other state in applying its law to the claims at issue in this case that involve small businesses doing business in the United States.

**CLAIMS FOR RELIEF**

**COUNT I - NORTH CAROLINA UNFAIR AND DECEPTIVE PRACTICES IN TRADE OR COMMERCE**
**(NCGS § 75-1.1, *et seq.*)**

70. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

71. Under North Carolina Unfair Trade and Deceptive Practices Act, § 75-1.1, deceptive acts or practices in the conduct of any business conducted in the State of North Carolina are unlawful.

72. Defendant's violations of NCGS §75-1.1, include, but are not limited to, advertising and soliciting businesses under the guise of improving their market presence when in fact, the businesses lose their on-going sales because of loss of product data, rankings and history.

73. Defendant harmed the Plaintiff by erasing product data on the e-commerce platforms, Plaintiff's own website and affecting Plaintiff and Plaintiff's products-ranking that adversely impacted sales. Such adverse impact is harmful beyond repair for a small-business by causing the Plaintiff to lose clients and business opportunities. Plaintiff's years of past work and reputation was destroyed by ChannelAdvisor's negligence.

74. Misleading or deceptive statements in advertising or soliciting clients are unlawful. ChannelAdvisor made a false or misleading statement of fact about its software product, the statement deceived Plaintiffs, the deception is material and influenced the Plaintiff's purchasing decision, Plaintiff has been injured as result of the statement at issue.

75. Defendant made false, misleading and deceptive statements about how its software product and services would increase potential clients' market presence. Defendant also promised a smooth transition with no loss of product data for the listings on different e-commerce platforms. Defendant's violations, include, but are not limited to, advertising and soliciting businesses under the guise of improving their market presence when in fact, the businesses lose their on-going sales because of loss of product data, rankings and history.

76. Defendant advertised and then solicited Plaintiff's and Class Members' business with misleading statements.

77.     Defendant's violations of § NCGS §75-1.1 render it liable for statutory treble damages, costs, and reasonable attorneys' fees pursuant to NCGS §§ 75-16 and 75-16.1.

## COUNT II- NEGLIGENCE

78.     Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

79.     Defendant's software lacked the proper functionality to upload large scale product data. Upon information and belief, based on repeated instances with class members, Defendant was aware of such defects in its software. Further, Defendant was non-responsive at the on-boarding stage. Defendant subsequently took over the uploading and deleted thousands of listings of product data.

80.     Defendant had full knowledge of the value and importance of the product data rankings and history. Defendant was aware of the impact on sales data based on deleting such data. Yet, Defendant did not exercise reasonable care in uploading such data.

81.     Defendant's negligence harmed Plaintiff and class members.

## COUNT III- UNJUST ENRICHMENT

82.     Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs above herein with the same force and effect as if the same were set forth at length herein.

83.     Defendant was unjustly enriched by receiving monthly fees and additional onboarding fees while not providing proper training or supervision to Plaintiff and actually deleting Plaintiff's valuable product data from the e-commerce platforms at Amazon and/or eBay.

84.     Plaintiff and Class Members conferred a benefit on Defendant with their subscription money and fees. Specifically, they purchased software product and services from Defendant and did not receive any benefit or consideration in return. Defendant adversely impacted Plaintiff and Class Members existing or ongoing business.

85. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate software and personnel management that fell below industry standards.

86. Plaintiff and Class Members have no adequate remedy at law because of the setback in ranking for sales of its products caused directly by ChannelAdvisor's acts.

87. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) the loss of the opportunity of how their products would have continued to ramp up in sales; (b) out-of-pocket expenses associated with the fixing of deleted data; (c) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the deleted product data, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from such deletion; and (d) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the deletions as a result of ChannelAdvisor's acts.

88. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

89. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully request that this Court enter a judgment:

A.    Certifying the Class and appointing Plaintiff Class Representative;

B.    Finding ChannelAdvisor's conduct was unlawful as alleged herein;

C.    Awarding Plaintiff and Class Members nominal, actual, compensatory, consequential and punitive damages as allowed by law;

D.    Awarding Plaintiff and Class Members statutory damages and penalties as allowed by law;

E.    Awarding Plaintiff and Class Members restitution as allowed by law;

F.    Awarding Plaintiff and Class Members reasonable attorneys' fees, costs and expenses;

G.    Awarding Plaintiff of any further relief at law or in equity as the Court deems just and proper.

Dated: October 26, 2022

By: _(signature)_

Deepali A. Brahmbhatt (*pro hac vice* pending)
Email: dbrahmbhatt@devlinlawfirm.com
3120 Scott Blvd, #13,
Santa Clara, CA 95054
Telephone: (650) 254-9805

Timothy Devlin (*pro hac vice* pending)
Email: tdevlin@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

Gary W. Jackson (NCSB # 13976)
gjackson@farrin.com
Christopher R. Bagley (NCSB # 50567)
cbagley@farrin.com
Law Offices of James Scott Farrin
555 S. Mangum Street, Suite 800
Durham, NC 27701
Telephone: (919) 688-4991

*Attorneys for Plaintiff SHENZHEN*
*RUOBILIN NETWORK TECHNOLOGY CO.,*
*LTD., on behalf of itself and all others*
*similarly situated*

# EX. A



**channeladvisor**

### Statement of Work for Self-Service Marketplaces

THIS STATEMENT OF WORK (this "Statement of Work" or "SOW") is made and entered this __8-28-2017__ (the "SOW Effective Date") by and between ChannelAdvisor Hong Kong Limited, having its principle place of business at 8th Floor Tai Sang Bank Bldg., 130-132 Des Voeux Rd., Central Hong Kong ("ChannelAdvisor"), and Shenzhen RuoBiLin Network Technology Co., Ltd, a  company formed under the laws of china, having its principal place of business at Longgang District,ShangXue Road, Huaxing Industrial Zone, office building 701, Shenzhen, GuangDong 518000 CN ("Customer") and shall be incorporated into the Master Services Agreement ("MSA") agreed to amongst the parties found at www.channeladvisor.cn/terms. By signing below, Customer acknowledges and agrees that it has read the MSA and agrees to be fully bound to its terms. Words in initial capital letters not defined herein shall have the meaning set forth in the MSA.  In consideration of the mutual covenants and conditions contained in this SOW, and intending to be legally bound hereby, the parties mutually agree as follows:

**1.   License Grant; Module Description.** Subject to the terms of the MSA, ChannelAdvisor grants to Customer a non-exclusive, nonassignable, non-transferable, revocable license, without the right to sublicense, to access and use the Module(s) identified herein on a Self-Service basis. A description of the included Modules can be found at: Marketplaces - http://www.channeladvisor.com/terms/marketplaces

**2.   Term.** This SOW shall be effective as of the SOW Effective Date and shall continue for a noncancellable 12 month period ("Initial Term"). Thereafter, this SOW will renew automatically at the end of the Initial Term for successive one-year periods("Renewal Term(s)") unless either party gives written notice to the other party at least thirty (30) days prior to the expiration of the applicable Term, that it does not wish to auto-renew the SOW.  The Initial Term and any Renewal Term(s) are referred to collectively herein as "Term." Renewal of this SOW or extension of the then-current Term shall constitute acceptance of the MSA as of the renewal or extension effective date, together with any new or changed terms. Customer shall review the MSA at the time of the renewal for any changes or additions to the MSA.

**3.   Fees.** Customer agrees to pay the following Fees in accordance with the terms of the MSA.  All Fees payable in USD by Paypal or wire transfer. Except as expressly provided in this SOW, Customer shall pay all Fees Net thirty (30) days from the invoice date.  For the avoidance of doubt, the pricing set forth herein applies regardless of Customer's use of one or all of the Modules listed above.

Deposit: USD 3430.00 due and payable on the SOW Effective Date.  All Fees and the Deposit are payable in USD via Paypal or wire transfer.

   a.   Monthly GMV Fee. Customer shall pay to ChannelAdvisor a Monthly GMV Fee* based on the following chart (GMV resets to $0.00 every month):

| For the GMV in the following tiers: | The rate applied for calculating the Monthly GMV Fee for each GMV tier is as follows: |
|---|---|
| For the First $300,000.00 in GMV | 0.00 % |
| For the remaining GMV in excess of $300,000.00 | 1.26 % |

\* The amount of the Monthly GMV Fee is calculated at the end of the calendar month in which it was accrued. First, the amount of GMV is identified.  Then the GMV amount is used to determine the applicable Monthly GMV Fee (using a table method).

       AND

   b.   Subscription Fee. Customer shall pay to ChannelAdvisor an upfront nonrefundable semi-annual Subscription Fee in the amount of $12,640.00 for the first semi-annual period, which is due and payable on the SOW Effective Date and $20,580.00 for each subsequent semi-annual period.

**4.  Special Terms.** N/A

**5. Additional Items.**

As of the SOW Effective Date, and for the period defined in the table below ("Services Period"), ChannelAdvisor will use commercially reasonable efforts to provide the services ("Services") described in this SOW. The Services Period may vary based on readiness of the data in the Customer's feed. Customer accepts responsibility for delays caused by lack of readiness of Customer's data or delayed delivery of such data. The terms found at the URLs listed herein, and any subsequent modifications to those terms, are incorporated into this SOW by reference. The Fees listed herein for the Item(s) shall be due and payable on the SOW Effective Date.

| Item Name | Network Site | One Time Fee | Services Period | Item Description |
|---|---|---|---|---|
| Launch Assistance Service - Amazon | Amazon US | $600.00 | 60 Days | http://www.channeladvisor.com/terms/launchassistance |
| Launch Assistance Service - eBay | eBay US | $600.00 | 60 Days | http://www.channeladvisor.com/terms/launchassistance |

**Additional Services:** Any additional work requested by Customer beyond the scope set forth herein shall be subject to a billable rate of $250.00 per hour, and will proceed only under a written amendment to this SOW signed by both parties.

**General.** Amendments to this SOW are governed by the MSA and must be in writing and executed by the parties. This SOW (as incorporated under the MSA) and any associated SOWs referenced herein constitute the entire agreement between the parties with respect to the subject matter of this SOW and supersede any and all prior or collateral agreements with respect to the subject matter hereof. This SOW is accepted and agreed by the parties as of the SOW Effective Date.

The individuals signing below represent they have authority to bind the named parties to this SOW.

| ChannelAdvisor Hong Kong Limited | Shenzhen RuoBiLin Network Technology Co., Ltd |
|---|---|
| By (Signature): | By (Signature): |
| Name (Printed): | Name (Printed): |
| Job Title: | Job Title: GM |
| Date: | Date: July 30, 201 |
| | Email: alex@bilin.com |

# EX. B

---------- Original ----------

**From:** "Chris Chia" <chris.chia@channeladvisor.com>;
**Date:** Thu, Mar 1, 2018 02:31 PM
**To:** "CA - Support Admin" <supportadmin@channeladvisor.com>; "Alex" <alex@bilins.com>;
**Subject:** Shenzhen RuoBiLin Network Technology Co., Ltd - Termination Request

Dear Channeladvisor,

Because of our launch manager has caused one of their major account listing withdrawn, which led to estimate 1million GMV lost per yer. Moreover, after the case happened, we are unable to response on time with a solid answer. So that, customer boss Alex mentioned that he has no more confidence in using CA and decided to terminate our service.

Our Channeladvisor Account information:
Company Name: Shenzhen RuoBiLin Network Technology Co., Ltd
Email Address : alex@bilins.com
Country : China
Address1 : office building 701,Huaxing Industrial Zone, ShangXue Road,Longgang District, Shenzhen,GuangDong
City :Guangzhou
Postal Code :510000

Can you please kindly help to initiate it?

Thanks!

Best Regards

**Chris Chia 谢灿汪**

Account Manager, Greater China

Mobile: +86 15914069392
QQ: 1593366753
Wechat: chriscxy

纳路销（上海）信息技术有限公司
www.channeladvisor.cn - Be Seen

上海市黄浦区淮海中路8号兰生大厦22室2207-2209室
Room2207-2209, 22/F, Lansheng Building, 8 Huai Hai Zhong Road, Shanghai, 200021, China

# EX. C

Solutions        Success Stories        Resources        News & Events        Careers        Blog

Home    |    Solutions

# Unleash Your E-Commerce Potential

Since 2001, our name has been synonymous with e-commerce growth. Our robust, industry-leading platform enables sellers like you to connect with customers, optimize operations and grow sales channels.

**How? It's simple.**

Retailers and brands send a single product data feed to the ChannelAdvisor system, where it's transformed and optimized to sync with dozens of marketplaces and hundreds of digital marketing channels. As orders and performance information flow back through the ChannelAdvisor system, results are measured and broken down to help you make better decisions about your e-commerce strategies.

## Connect to Customers

Connect to Customers with 360° support for digital marketing and marketplace expansion on channels like Amazon, eBay, Walmart, Google, Facebook and dozens of others.

LEARN MORE

## Optimize Operations

Optimize Operations with our powerful mix of algorithmic repricers, fulfillment solutions, product content optimization and more.

LEARN MORE

 REQUEST A CALL

# Grow Sales Channels

Win the buy box, syndicate product data and optimize performance.

Grow Sales Channels through comprehensive solutions for order fulfillment, drop shipping, first-party selling, product content optimization and Where to Buy widgets.

**LEARN MORE**

## Subscribe to Our Newsletter

## Request an Advertising Analysis

## Design Your Solution

JOIN THE COMMUNITY

     

 
channeladvisor

NYSE ECOM

**SOLUTIONS**
What's New
Marketplaces
Digital Marketing
Where to Buy
Product Intelligence
Reviews

**ABOUT**
Our Story
Leadership
Board of Directors
Partners
Investor Relations
Locations

**SUCCESS STORIES**
**RESOURCES**
**NEWS & EVENTS**
**CAREERS**
**BLOG**
**SUBSCRIBE**
**CONTACT US**

copyright © 2001-2018 channeladvisor all rights reserved

# EX. D

# PRODUCT CONTENT OPTIMIZATION


channeladvisor®
TIP SHEET

## We don't just list your products, we make your product content better.

Product Content Optimization (PCO) is more than just mapping your data to multiple e-commerce destinations. Quality product data ensures a better customer experience, more efficient advertising and, ultimately, leads to more sales. The major challenge many organizations face, though, is exactly where to begin. Advertising and marketing efforts are increasingly dependent on quality content, delivered on-demand. In fact, two of every three clicks we see on Google are on Product Listing Ads (PLAs) which are feed-generated and key drivers of sales.

If you aren't syndicating quality product content, you may run the risk of missing out on conversions.

## TRANSFORM YOUR PRODUCT CONTENT TO QUALITY CONTENT

Our new **Product Content Optimization** technology transforms and enhances the quality of your product content. Our strategic approach also automates content distribution by creating a process tailored to your unique syndication needs. Then, using our efficient, repeatable algorithm your enriched product data is accurately syndicated across multiple retailers, ad networks and other destinations, such as Amazon, Google, Facebook, Instagram and more.

> *At ChannelAdvisor two of every three non-branded search clicks we see on Google are for PLAs. Those PLAs can be a key driver of sales on Google.*
>
> -Link Walls,
> VP of Product Management,
> ChannelAdvisor

## QUALITY PRODUCT CONTENT – DELIVERED



- **Become more productive** and free up your internal teams to tackle other projects.
- Optimize the quality of your assortment and **boost your ROAS.**
- Avoid costly delays to display and ensure your feed fields are always destination compliant.
- Dramatically **reduce time-to-delivery** of your most important feeds by letting our team manage quality and syndication.
- **Enhance your marketing efforts** by creating quality content for product-based advertising like Google Shopping and Facebook and Instagram dynamic ads.
- **Get results** and tie your quality content syndication efforts on major channels, such as Amazon and other retailers, back to actionable insights with our analytics dashboard.

## THE CHANNELADVISOR ADVANTAGE

Face it, small feed delivery organizations don't often optimize the quality of your product content. They just push out feeds. Agencies rarely understand the value of quality product data, or the language of your industry. Almost any web platform can crank out a passable Google Shopping feed. We've been in the e-commerce business for over sixteen years and are recognized by many in the industry as one of the leaders and experts in the e-commerce space. ChannelAdvisor Product Content Optimization is designed from the ground up to handle and transform your product data into a quality product content feed.

## WHAT'S NEXT

If you need help getting your Product Content Optimization project started, or would like to learn more about how ChannelAdvisor can help you transform and optimize your product content for retail and advertising destinations online, and enable you to, give us a call at 866-264-8594 or email info@channeladvisor.com.


channeladvisor®

Copyright 2017 ChannelAdvisor Corporation All rights reserved.

866.264.8594
WWW.CHANNELADVISOR.COM
INFO@CHANNELADVISOR.COM

# EX. E



Home   |   Terms   |   Marketplaces

ChannelAdvisor's Marketplaces module allows a Customer to manage products on multiple marketplaces from a single user interface. Functionality includes inventory and listing management, order and fulfillment management and performance reporting.

The following features are included with a subscription to the Marketplaces module:

- Inventory
- Marketplaces
- Sales/Fulfillment
- Reporting
- Admin
- Alerts and Notifications
- Developer Network
- Limited number of Flex Feeds

**Dependencies**
To use the Marketplaces module a Customer will need to provide product data to ChannelAdvisor using a data feed, API or the user interface. The Customer will also need to provide access to its accounts at each marketplace that will be managed using ChannelAdvisor. The Customer is responsible for the setup and maintenance of its accounts with each marketplace.

**Limitations**
The Marketplaces module supports quantities of up to 250,000 listings on eBay and 350,000 products on Amazon, Buy.com and other supported third party marketplaces.

## Auf Deutsch

Das *Marketplaces Modul* von *ChannelAdvisor* ermöglicht dem *Kunden* die Verwaltung von Produkten auf mehreren Marketplaces von einer einzigen Nutzerschnittstelle aus. Die Funktionen schließen Bestands- und Listungsmanagement, Bestell- und Erfüllungsmanagement sowie Performance Reporting ein.

💬 REQUEST A CALL

- Bestand
- Marketplaces
- Verkauf/Erfüllung
- Reporting
- Admin
- Alarme und Hinweise
- Developer Network
- Begrenzte Anzahl von Flex Feeds

## Abhängigkeiten

Um das *Marketplaces Modul* nutzen zu können, muss der *Kunde ChannelAdvisor* Produktdaten via einen Daten-Feed, eine API oder die Nutzerschnittstelle bereitstellen. Der *Kunde* muss *ChannelAdvisor* außerdem bei jedem Marketplace den Zugang zu seinen Nutzerkonten gewähren, die über *ChannelAdvisor* verwaltet werden sollen. Der *Kunde* ist für die Einrichtung und Wartung seiner Nutzerkonten bei jedem Marketplace selbst verantwortlich.

## Einschränkungen

Das *Marketplaces Modul* unterstützt Mengen von bis zu 250.000 Listungen auf eBay und 350.000 Produkten auf Amazon, Buy.com und anderen unterstützten Marketplaces Dritter.







NYSE: ECOM

**SOLUTIONS**
What's New
Marketplaces
Digital Marketing
Where to Buy
Product Intelligence
Reviews

**ABOUT**
Our Story
Leadership
Board of Directors
Partners
Investor Relations
Locations

**SUCCESS STORIES**

**RESOURCES**

**NEWS & EVENTS**

**CAREERS**

**BLOG**

**SUBSCRIBE**

**CONTACT US**

Terms of Use | Copyright/IP Claims Notice | Privacy Policy | Sitemap

copyright © 2001-2018 channeladvisor. all rights reserved.

# EX. F

**Leads for Attorneys - Connect With 100,000 Clients. Targeted By Practice Area in Re**



# Benson Leng • 3rd

E-Commerce. E-Travel. OTA. Account Management & Servicing. Business Development. Media Planning. Advertising Sales

Huangpu District, Shanghai, China

ChannelAdvisor

Université de Toulouse II - Le Mirail, France (Taylor's

See contact info

500+ connections

**Message**  ●●●

## SUMMARY OF QUALIFICATION

• Possessed a French Degree in Hospitality and Tourism Management, specializing in International Hotel and Restaurant Management (First Class Honors)
• Years of experience in Hospitality, Advertising, Media, Publishing Sales & Marketing.
• Working experience in OTA, Hospitality, Advertising & Media Sales, Publishing, Media Planning, Marketing & Entertainment Industry
• Affinity/experience within e-travel and/or hotel/travel industry;
• Good interpersonal, communication, presentation and multitasking skills and am experienced interacting with clients and managing projects.
• Pro-active, sense of responsibility, friendly and can work independently;
• Quick and resourceful, flexible, accurate, strong analytical skills and an eye for detail;
• Great face-to-face and telephone communication skills;
• Team player, motivated and enjoys to work in e-travel and hospitality;
• Possessed own transport(in Malaysia), and willing to travel and reside overseas
• Possessed great people skills, outgoing personality
• Neat and pleasant looking, tactful, possess a mature personality with good communication and interpersonal skills
• Am a 'people' person, with the necessary attitude and determination to achieve positive results for my team and the organization
• Self motivated, confident, and target- oriented
• Able to work under pressure
• Business focused;
• Positive attitude;
• Good command of language in English, Malay, Mandarin, Cantonese, Hokkien, French.
• Availability to travel 50% of the time;
• Already have a work permit to work in China.

Show less ∧

---

**Benson's Activity**
1,015 followers

**+ Follow**


Malaysian initial key Cabinet Ministers and Prominent Council. Towards a better Malaysia! #newmalaysia #bettermalaysia #proudmalaysia #history #leadership #awesome

Benson liked


I just got into Bangkok last night for work, and it always makes me reflect deeply about life. Some of the best and worst days of my life were spent here. Many years ago, I left Thailand in poverty,

Benson liked


Happy birthday, Sea Group! #LifeAtShopee Shopee

Benson liked

**See all activity**



# Experience


**Service Team - Account Management**
ChannelAdvisor
Jul 2017 – Present • 11 mos
Shanghai City, China

Work Description:
-Maintain a close relationship with set accounts to ensure customer satisfaction
-Regular and consistent customer communications
-Ensured assigned accounts are utilizing all appropriate features in Channeladvsior software
-Advise client on the adoption of new features as appropriate
-Maintain high renewal and low termination rates for set accounts by maintaining regular communication and actively monitoring any at risk behaviors
-Attainment of set revenue goals
-Upsell related services and products
-Cross- Selling additional products and services to customers
-Drive the Channeladvisor relationship to the executive level within set accounts

Gained:
-Ecommerce/ Cross Border Tarde(CBT) Ecosystem introduction
-Opportunity / Market Size Analysis
-Listing Strategies on eBay & Amazon (Optimization)
-China Merchant Daily Life & Amazon (Solution Providing)
-Sales Force usage and operation


**Account Manager China**
Booking.com
Dec 2015 – Jul 2017 • 1 yr 8 mos
Chengdu, Sichuan, China

Achievements:-
1) Increase Chengdu market growth by 81% in year 2016 (YOY)

2) Increase Kunming market growth by 74% in year 2016 (YOY)

3) Increase no. of properties for Chengdu city from 350 in year 2015 to 780 by end of 2016!

4) Booking.com North Asia Think Tank member in 2016 & 2017– consist of outperforming colleagues from China, HK, Taiwan, Macau, Japan & South Korea offices. To brainstorm new ideas and insights for the region in order to boost the business!

5) China "Insights" Ambassador – to promote the usage of our internal "Insights" tool (Performance Platform) within China offices, especially in Chengdu office.

6) Enhanced Engagement level with top & potential partners – The St. Regis, Ritz Carlton, Intercontinental Global Center, Dorsett Grand, Fraser Suite, Oakwood Hotel, Ascott Group Hotels

7) Coaching & training new team members in office. Acting as Buddy for new hires and coordinators.

Work Description:
Currently focusing on the area of Sichuan(Chengdu) , Yunnan(Kunming), Sichuan Other Cities,

Etc.
- Visit the important hotels in South West China;
- Support Booking.com BV's-strategy for hotel availability and supply within West China;
- Promote the Booking.com BV brand name and its online reservation services to hotels;
- Responsible for area coverage;
- Inform hotels and advise on allotment, availability and supply;
- Rate checks and competitor checks;
- Liaison person for hotels to contact when they have questions;
- Providing hotels with information and advice by mail and email, including follow-ups;
- Follow up on cancellations and evaluations;
- Accompany and train hotels on how to use Booking.com's extranet and rates & availability system;
- Support hotels with regards to Booking.com's system;
- Organize and coordinate Tourist Trade Fair visits to liaise with hotels; .
- Check statistics in the control room and follow up.



**Co-Owner**
Chengdu Panda Apartment
Jun 2014 – Nov 2015 • 1 yr 6 mos
Chengdu, Sichuan, China

Achievements:-
1) Managing 16 rooms over 2 floors with 6 employees (1 Front desk supervisor, 3 part timers, 2 cleaning ladies)

2) Increase Occupancy % from monthly 70% up to 89%.

3) Ranked No.4 in Tripadvisor as of April 2015 (out of 2000+ hotels in Chengdu)*

4) Ranked No.5 in Booking.com as of Jan 2015 (Out of 350+ hotels in Chengdu)*

5) Ranked No.8 in Airbnb.com as of Nov 2014 (out of 349+ rentals in Chengdu)*

6) Web 2.0 Public Website - WWW.CDAPARTMENT.COM

7) Guests Review Video 2015 (from all International Guests) in Youku or Youtube.

8) Booking.com Guest Review Award 2014 & 2015 – Score 9.2

9) Tripadvisor Traveler's Choice 2015/2016

Work Description:
http://www.cdapartment.com

Acting as a consultant role and managed Chengdu Panda Apartment in Chengdu!

Mission: Providing an enjoyable and memorable stay for International travellers who craved for privacy and comfortability

Vision: A PLACE LIKE HOME!

Duties:
-Providing utmost customer service
-Cost & Revenue Management
-Arranging guests trips and itinerary
-Payroll for staff
-Involvement in room interior designing and renovation works
-Creating own website - www.cdapartment.com
-Video shooting for guests

Media (4)



**Account Manager China**
Booking.com
Apr 2012 – Jun 2014 • 2 yrs 3 mos
Guangzhou, Guangdong, China

Achievements:-
1) Based in Shanghai for 6 months. Then relocated to Guangzhou to open up new office for Booking.com. To set up and grow the business in Southern Region & Guangzhou office since Oct 2012.

2) Increase Guangzhou market growth by 60% in 2012 (YOY)

3) Assisted in the region wide commission increase movement by 3% for all properties in 2013. First office & region in China to do this. Success ratio at 95%!

3) Increase Guilin, Yangshuo Xiamen market growth by approx. 98% in 2013 (YOY)

4) Increase no. of properties for Southern region from 1250 in year 2012 to 2890 by end of 2013!

5) The 1st & pioneer in China to act as the main contact person between HQ, Amsterdam & Greater China (HK, Macau, Taiwan) for Booking.com Self- Build Acquisition process (Self Registering, Info uploading system) in year 2013 & 2014 – to ensure a smooth transition period for both internal colleagues and new hotel partners!

Main Responsibilities:
Focusing on the area of Guangzhou, Xiamen, Guilin, Yangshuo, & other regions (Guizhou, Jaingxi, Yunnan)

Besides that, I will be the one informing hotels about Booking.com. And to provide hotels the (initial) training on how to use Booking.com's system. Focus on the improvement of hotel availability and supply in order to support Booking.com in meeting the demands of the visitors on the Booking.com website.
• Promote the Booking.com BV brand name and its online reservation services to hotels;
• Inform hotels and advise on allotment, availability and supply;
• Rate checks and competitor checks;
• Liaison person for hotels to contact when they have questions;
• Accompany and train hotels on how to use Booking.com's extranet and rates & availability system;
• Support hotels with regards to Booking.com's system;
• Organize and coordinate Tourist Trade Fair visits to liaise with hotels;

**Account Manager**
Blu Inc Media Sdn Bhd
Dec 2010 – Dec 2011 • 1 yr 1 mo
Kuala Lumpur, Malaysia

Achievements:-
1) Managed & servicing a group of client accounts worth total of RM1.5 Million annually

2) Increased new advertiser volume by 10% annually worth approx. RM150, 000

3) Spearhead Shiseido New Spring Season Make Up Cosmetics – A one-time off project worth RM50, 000. Including Roadshow and Make Up Beauty Contest in One Utama (One of the leading shopping mall in Kuala Lumpur). Tied up with print advertising & online marketing via mobile app and tailor made voting website.

4) Enhanced clientele engagement for brands like Estee Lauder, Shiseido, Hugo Boss, Versace,

Coach, Fendi, Clinique, Jimmy Choo, Yves Saint Laurent, Seiko, Kanebo, Alba, Samsung, Blackberry, LG and others

Work description:
- In charge of selling & promoting Female title which is Malaysia's Leading Fashion & Beauty Magazine
- Servicing and manage clients including Estee Lauder, Shiseido, Hugo Boss, Versace, Coach, Fendi, Clinique, Jimmy Choo, Yves Saint Laurent, Seiko, Kanebo, Alba, Samsung, Blackberry, LG and others
- Involved in consultative selling to help clients to achieve/ exceed their marketing objectives
- Involved in special projects & events which required collecting project specifications/ task list from the client and accurately developing / executing it
- Finding new potential sales & increase company revenue, to achieve sales target
- Helping companies to plan and execute their advertising budget in order to bring in more enquiries and responses from public

Show more ⌄

## Education

**Université de Toulouse II - Le Mirail, France (Taylor's University, School of Hospitality & Tourism)**
Bachelor of Hospitality & Tourism Management (Honours) (Licence Hôtellerie Tourisme), Hospitality & Tourism Management, 1st Class Honours
2004 – 2007

Specialization: International Hotel and Restaurant Management

**Taylor's University, School of Hospitality & Tourism**
Higher Diploma in Hotel Management (Brevet de Technicien Supérieur Hôtellerie) (BTS), Higher Diploma in Hotel Management, Distinction
2004 – 2005

Specialization: Culinary Art

## Volunteer Experience

**Volunteer**
BEAN
Jun 2012 – Oct 2012 • 5 mos
Children

English Teaching Voluntary Program - Every Saturday from 2pm to 5pm - Teaching poor and under-priviledged children English in the outskirts of Shanghai city!

**Volunteer -Knit Squares for AIDS-Impacted Orphans**
BEAN
Jul 2012 – Aug 2012 • 2 mos
Disaster and Humanitarian Relief

A part of voluntary act by knitting 20 cm squares that will be pieced together to make into blankets to keep children in South African orphanages warm. (to help to keep AIDS-impacted orphans warm)

**Volunteer**
Chengdu WangJiaGuai Old Folks Home -成都汪家拐为老服务中心
Dec 2014 – Present • 3 yrs 6 mos
Social Services

-Visiting old folks and care for their daily life in WangJiaGuai Old Folks Home.
-Accompany old folks for daily activities

## Skills & Endorsements

**Online Advertising · 20**
B. Endorsed by 7 of Benson's colleagues at Booking.com

**Account Management · 18**
B. Endorsed by 10 of Benson's colleagues at Booking.com

**Advertising · 13**
B. Endorsed by 5 of Benson's colleagues at Booking.com

Show more ⌄

## Accomplishments

7 Languages ⌄
Cantonese • Chinese • English • French • Hokkien • Japanese • Malay

3 Courses ⌄
Art of Influencing • Personal effectiveness & Coomunication Skills • Sales for Performance

2 Organizations ⌄
Young Malaysian Movement • Kluang Buddhist Society (Buddhist Youth)

1 Honor & Award ⌄
1st Class Honours - Bachelor of Hospitality & Tourism Management (Honours) (Licence Hôtellerie Tourisme)

## Interests

**BookingGo**
11,170 followers

**Greater Giving**
676 followers

**Container Hotel Group**
64 followers

**Hospitality Vacancies Worldwide ...**
114,605 members

**AirAsia**
209,331 followers

**GaiGai**
191 followers

See all



## Benson Leng • 3rd

E-Commerce. E-Travel. OTA. Account Management &
Servicing. Business Development. Media Planning.
Advertising Sales

Huangpu District, Shanghai, China



ChannelAdvisor

Université de Toulouse II - Le
Mirail, France (Taylor's

See contact info

500+ connections

SUMMARY OF QUALIFICATION • Possessed a French Degree in Hospitality and Tourism Management,
specializing in International Hotel and Restaurant Management (First Class Honors) • Years of
experience in Hospitality, Advertising, Media, Publishing Sales & Marketing. • Working experience in ...





# FedEx ®

TO **C/O Corporatn Suite Company**

UNITED STATES US

CHANNELADVISOR CORP.
2626 GLENWOOD AVE.
SUITE 550
RALEIGH NC 27608
(919) 688-4991 X 14177

REF: 1537640

INV:
PO:                                     DEPT:

FedEx
Express

E

MON - 31 OCT 10:30A
PRIORITY OVERNIGHT

TRK# **7703 3880 6913**
0201

27608
RDU
NC-US

**22 RZZA**

R 557
ST 22

2
10:30
6913
10:31

B

▶ Insert shipping
document here.

Pull to open.

Pull to open.

# STATE OF NORTH CAROLINA

File No. <del>22 CV 013310</del> 22 CV013310

__Wake__ County

22 CVS

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff* <br> Shenzhen Ruobilin Network Technology Co., LTD. | **CIVIL SUMMONS** |
| *Address* <br> c/o Law Offices of James Scott Farrin, 555 S. Mangum St, Ste.800 | [ ] ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| *City, State, Zip* <br> Durham, NC 27701 | G.S. 1A-1, Rules 3 and 4 |
| **VERSUS** | *Date Original Summons Issued* <br> 10/26/2022 |
| *Name Of Defendant(s)* <br> ChannelAdvisor Corp. and Channeladvisor Hong Kong LTD | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| | |
|---|---|
| *Name And Address Of Defendant 1* <br> ChannelAdvisor Corp. <br> 2626 Glenwood Ave Ste 550 <br> Raleigh, NC 27608 | *Name And Address Of Defendant 2* <br> Channeladvisor Hong Kong LTD <br> 8th Floor Tai Bank Bldg 130-132 De Vouex Rd., <br> Central Hong Kong |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | | |
|---|---|---|
| *Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff)* <br> Christopher Bagley <br> 555 S. Mangum St. #800 <br> Durham, NC 27701 | *Date Issued* <br> 10/26/2022 | *Time* <br> 5 ☐ AM ☒ PM |
| | *Signature* | |
| | ☑ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| | | |
|---|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)** <br> This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* <br> ☐ AM ☐ PM |
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have *MANDATORY ARBITRATION* programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
WAKE COUNTY                           SUPERIOR COURT DIVISION

SHENZHEN RUOBILIN NETWORK CO.,          22-CVS-13310
LTD., individually and on behalf of all
others similarly situated,

                          Plaintiff,          **AFFIDAVIT OF SERVICE**

          v.

CHANNELADVISOR CORP. and
CHANNELADVISOR HONG KONG,
LTD.,

                          Defendants.

The undersigned certifies that:

Copies of the Class Action Complaint Demand for Jury Trial, Civil Summons, and

General Civil Action Cover Sheet were deposited in the United States mail for mailing to Wake

County Clerk of Court, P.O. Box 351, Raleigh, NC 27602.


Respectfully submitted, this _____ day of November, 2022.


                          Chris Bagley (NC Bar No. 50567)
                          Law Offices of James Scott Farrin
                          555 S Mangum Street, Suite 800
                          Durham, NC 27701
                          Telephone: 919-688-4991
                          E-mail: cbagley@farrin.com

                          **Counsel for Plaintiff and the Proposed**
                          **Class**

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| WAKE COUNTY | SUPERIOR COURT DIVISION |

**22-CVS-13310**

SHENZHEN RUOBILIN NETWORK CO.
LTD., individually and on behalf of all
others similarly situated,

                Plaintiffs,

    v.

CHANNELADVISOR CORP. and
CHANNELADVISOR HONG KONG,
LTD.,

                Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2022, I served the foregoing *Affidavit*

*of Service* on the party to this action by mailing, via regular mail, said

document/pleading to the party as indicated and addressed below:

        ChannelAdvisor Corp.
        c/o Corporation Service Company
        2626 Glenwood Avenue, Suite 530
        Raleigh, NC 27608

        Channeladvisor Hong Kong LTD
        8th Floor Tai Bank Bld 130-132 De Vouex Rd.,
        Central Hong Kong

Respectfully submitted, this 2nd day of November, 2022.

                        Chris Bagley (NC Bar No. 50567)
                        Law Offices of James Scott Farrin
                        555 S Mangum Street, Suite 800
                        Durham, NC 27701
                        Telephone: 919-688-4991
                        E-mail: cbagley@farrin.com

                        ***Counsel for Plaintiff and the Proposed***
                        ***Class***

**STATE OF NORTH CAROLINA**
**WAKE COUNTY**

**IN THE GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**

JANISOURCE LLC, CLEAR
MARKETING CORP., individually and on
behalf of all others similarly situated,

2022 NOV -9 P 1: 52 **22-CVS-13309**

WAKE CO., C.S.C.

Plaintiffs,

**AFFIDAVIT OF SERVICE**

v.

CHANNELADVISOR CORP.,

Defendant.

The undersigned certifies that:

Copies of the Class Action Complaint Demand for Jury Trial, Civil Summons, and General Civil Action Cover Sheet were deposited in the United States mail for mailing to Wake County Clerk of Court, P.O. Box 351, Raleigh, NC 27602.

Respectfully submitted, this 2nd day of November, 2022.

Chris Bagley (NC Bar No. 50567)
Law Offices of James Scott Farrin
555 S Mangum Street, Suite 800
Durham, NC 27701
Telephone: 919-688-4991
E-mail: cbagley@farrin.com

*Counsel for Plaintiff and the Proposed Class*

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

SWORN TO AND SUBSCRIBED before me in my presence, voluntarily for the purposes

stated therein, in the county and state indicated about, this the 2nd day of November, 2022.

That the undersigned had personal knowledge of the identity of the principal or satisfactory

evidence of the principal's identity by having inspected a picture identification.

*Jason Smith*

Notary Public: __Jason Smith____
                    Printed Name

My Commission Expires: October 30, 2027